UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                            Case No. 8:12-bk-02560-MGW
                                                                  Chapter 11
LDB Media, LLC, d/b/a
SNN Local News 6,

       Debtor.
_____/


LDB Media, LLC                                                    Adv. No. 8:12-ap-00715-MGW

       Plaintiff,

v.

Gravitas Leasing, LLC,

       Defendant.
_____/


**MEMORANDUM OPINION ON
VALIDITY OF SECURITY INTERESTS**

      Gravitas Leasing claims to have a security interest in satellite news trucks (and other vehicles) that the Debtor uses to operate its cable news channel, as well as the equipment located in the news trucks. But Gravitas did not note its interest on the titles to the vehicles until sometime during the 90-day period before the Debtor filed this case. And neither Gravitas' security agreement nor its UCC-1 financing statement specifically lists the equipment in the news trucks or identifies the equipment by category (i.e., "all equipment"), although these documents do specifically refer to other equipment. The Court must now decide whether the Debtor can avoid Gravitas' interest in the vehicles as a preferential transfer under Bankruptcy Code § 547 and whether Gravitas otherwise has a security interest in the equipment located in the news trucks.

It is undisputed that Gravitas did not perfect its interest in the vehicles until sometime during the preference period and that perfection of the security interest was a transfer of an interest in the Debtor's property on account of an antecedent debt. So there is no question the liens on the vehicles are avoidable as a preferential transfer. To the extent the equipment on the news trucks is deemed a fixture (referred to as an accession), the lien on the equipment is avoidable for the same reason. To the extent the equipment is not a fixture (or accession), however, then Gravitas does not have a security interest in it because the parties' security agreement (or, for that matter, Gravitas' financing statement) does not reasonably identify the equipment as collateral. Accordingly, the Court concludes that Gravitas does not have a valid security interest in the news trucks or the equipment located in them.

## Background

The Debtor operates a 24-hour local news channel in Sarasota County, Florida. In early 2009, the Debtor borrowed $400,000 from the Sarasota Herald Tribune Division of NYT Management Services. The Debtor executed a $400,000 note in favor of the Tribune to memorialize its obligation to repay that loan. The Debtor's obligations under that note were secured by certain assets it used in the operation of its cable news channel. The Tribune recorded a UCC-1 to perfect its interest in the assets identified in the parties' security agreement. The Tribune subsequently assigned the $400,000 note and its rights under the parties' security agreement to Gravitas Leasing.

Just over a year later, the Debtor entered into a consolidated and renewed promissory note in favor of Gravitas in the amount of $400,000. Like the original note, the renewed note was secured by certain assets the Debtor used to operate its cable news channel. Two weeks after the Debtor executed the renewed promissory note, Gravitas recorded a UCC-1 financing statement

to perfect its security interest in its collateral. Gravitas' UCC-1 financing statement described its collateral as specified equipment and vehicles:

>All that personal property, equipment and vehicles described on
>Exhibit "B" attached hereto and made a part hereof.

Attached to the UCC-1 was a list of collateral. Included on that list of collateral were nine vehicles—including four that were identified as some sort of news truck—and a variety of equipment.

The Debtor apparently defaulted on the renewed promissory note in July 2011. As a consequence, Gravitas sued the Debtor in state court to recover on the note and foreclose its security interest in the collateral. Ultimately, Gravitas obtained a $434,804.54 final summary judgment on January 23, 2012. A foreclosure sale (for the collateral) was scheduled for February 27, 2012. Three days before the foreclosure sale, the Debtor filed for bankruptcy.

The Debtor then filed this adversary proceeding objecting to the $454,424.25 secured claim that Gravitas filed in this bankruptcy case. The basis of that claim was "money loaned," and the basis for perfection of the security interest was a "UCC-1/Judgment." In Count I of the complaint, the Debtor objects to Gravitas' claim because it failed to attach any documentation showing that the claim is secured. In Count II, the Debtor seeks to avoid the perfection of Gravitas' security interest as a preferential transfer. Gravitas later amended its claim to attach a variety of documents it says demonstrates the existence of a valid security interest in the trucks and the equipment located in them.

But Gravitas' amended claim has not mooted out any of the issues in this proceeding. The Debtor still claims Gravitas does not have a lien on the vehicles (including news trucks) because the liens are avoidable preferences. And the Debtor says Gravitas does not have a validly perfected security interest in any equipment located in the news trucks because it is not properly

described in Gravitas' financing statement. So this Court must now determine whether (i) Gravitas' liens on the Debtor's vehicles (including the news trucks and any equipment affixed to them) can be avoided as preferential transfers; and (ii) Gravitas has a security interest in any of the equipment contained in the news trucks.

## Conclusions of Law[1]

The first issue can be resolved fairly easily. Ordinarily, a security interest is perfected by filing a financing statement.[2] There is an exception, however, for motor vehicles.[3] A security interest in motor vehicles is perfected by the secured party noting its interest on the certificate of title for the vehicle.[4] Neither party disputes that Gravitas was required to note its interest on the certificates of title to the news trucks to perfect its interest in those vehicles.

And neither party disputes that Gravitas did not note its interest on the certificates of title for those vehicles until sometime during the 90-day period before this case was filed. Bankruptcy Code § 547, of course, authorizes the Debtor to avoid any transfer of an interest in its property made within the 90-day period before filing bankruptcy if the transfer was made for the benefit of a creditor and on account of an antecedent debt.[5] On its face, Gravitas' perfection of its security interest in the vehicles appears to be a clear preferential transfer. Gravitas, however, argues for an equitable exception to the rule that preferential transfers may be avoided.

---

[1] The Court has jurisdiction over this adversary proceeding under section 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

[2] § 679.3101, Fla. Stat.

[3] § 679.3031, Fla. Stat.

[4] § 679.3031, Fla. Stat.; § 319.27(1), Fla. Stat.

[5] 11 U.S.C. § 547(b).

The sole basis for the proposed exception is the fact that Gravitas did not note its interest on the title to the news truck until the 90-day before this case was filed because the Debtor, itself, was not listed on the titles to the vehicles until then. Even though the Debtor apparently bought the vehicles sometime in 2009, for one reason or another it never had the titles to those vehicles changed to reflect its ownership interest in them. Gravitas says this is significant because it noted its interest on the titles as soon as (perhaps the same day that) the Debtor had them issued in its name.

The Court, however, is less certain of the significance of that point. It appears Gravitas is arguing—without any legal authority—that it could not have perfected its security interest in the vehicles any earlier, and as a consequence, it should not be punished for the Debtor's delay in having the titles issued in its name. But that is not necessarily the case. Gravitas could have insisted on perfecting its interest in the vehicles at the same time it perfected its interest in the other collateral—which was almost two years before this case was filed. Had it done so, Gravitas would have discovered that the Debtor did not have "title" to the vehicles, although there was no question it owned them. At that point, Gravitas could have insisted that the Debtor have the titles to the vehicles reissued so it could perfect its interest in them. So Gravitas was not, in actuality, precluded from perfecting its security interest any earlier.

And in any case, Gravitas does not provide any legal authority supporting an exception to the plain terms of § 547 under these facts. The closest authority the Court could find is the exception contained in § 547(e)(3).[6] Under that subsection, a "transfer" for preference purposes cannot be made before the Debtor actually acquires an interest in the property transferred.[7] It is

---

[6] 11 U.S.C. § 547(e)(3).

[7] *Id.*

true, here, that the Debtor did not have "title" to the vehicles until sometime during the preference period. But all of the parties acknowledge the Debtor had an interest in the vehicles long before it had the titles issued in its name. Because no exception applies here, Gravitas' perfection of its security interest in the vehicles is avoidable as a preferential transfer under § 547.

As a consequence, Gravitas does not have a valid security interest in the equipment in the news trucks unless it can demonstrate that the equipment (i) is not an "accession"; and (ii) that it is covered under Gravitas' UCC-1. If the equipment is an accession, then it is, in essence, a fixture to the news trucks. And since Gravitas does not have a lien on the trucks, it would not have a lien on any fixtures to the news trucks. If the equipment is not an accession, then the fact that Gravitas does not have a lien on the trucks is irrelevant, and the only relevant issue becomes whether Gravitas' UCC-1 covers the equipment.

Determining whether the equipment is an accession is no easy task. Section 679.1021, Florida Statutes, defines an accession as "goods that are physically united with other goods in such a manner that the identity of the original goods is not lost."[8] Unfortunately, neither party identifies the appropriate standard for determining whether the equipment in this case falls within the definition of "accession" or otherwise cites any legal authority for the Court to use in making that determination. Based on its own research, the Court was unable to locate any case law in Florida specifically discussing when property becomes an accession. Courts outside of Florida that have considered that issue under the UCC have generally looked to the common law.[9]

---

[8] § 679.1021(1)(a), Fla. Stat.

[9] For an excellent discussion of accessions, see Steven H. Nickles, *Accessions & Accessories Under Pre-Code Law & UCC Article 9*, 35 Ark. L. Rev. 111 (1981).

Under common law, an accession is a good that is an integral part of the principal good it is attached to.[10] It goes without saying, then, that not all goods attached or affixed to another good are accessions. Instead, the majority of courts follow what one commentator has referred to as the "readily identifiable, easily detachable" test for determining when goods become accessions:

> [W]here the articles later attached to an automobile or other principal article of personal property become so closely incorporated with the principal article that they cannot be identified and detached therefrom without injury to the automobile or other principal article, such articles become a part of the machine or principal article to which they are so attached and will pass by accession to the one having a chattel mortgage or other lien upon the principal article, if the lien is enforced. But when the articles added can be readily identified and detached without injury to the principal machine or article, they do not pass by accession to the one having a prior chattel mortgage or lien on the principal article.[11]

Some courts, however, have not limited accessions to goods that will cause physical injury if removed.[12] Those courts look more broadly at the overall impact detachment of the goods will have on their worth.[13] Fortunately, the Court need not determine whether the equipment in this case is an accession because Gravitas does not have a security interest in the equipment in the first place.

In fact, the bulk of the parties' arguments have centered on whether Gravitas perfected its security interest in the equipment. But that puts the "cart before the horse." There is no need to consider whether Gravitas perfected its security interest if it does not actually have a security

---

[10] Nickles, *Accessions & Accessories*, *supra* note 9, at 118.

[11] *Goodrich Silvertown Stores v. Pratt Motor Co.*, 269 N.W. 464, 465 (Minn. 1936); Nickles, *Accessions & Accessories*, *supra* note 9, at 119-20 & n.23 (citing numerous cases).

[12] Nickles, *Accessions & Accessories*, *supra* note 9, at 121.

[13] *Id.*

interest to perfect. Under section 679.2031, Florida Statutes, a security interest in collateral is not enforceable against the debtor until, among other things, the debtor has authenticated a security agreement that describes the collateral.[14]

According to section 679.1081, Florida Statutes, a description of personal property in a security agreement is sufficient if "it reasonably identifies what is described."[15] As the comment to that section puts it, a description of collateral is sufficient if "the description does the job assigned to it: it makes possible the identification of the thing described."[16] Section 679.1081 then goes on to provide six methods of reasonably identifying collateral: (i) specifically listing the collateral; (ii) listing the collateral by category; (iii) listing the collateral by a type defined in the UCC; (iv) listing the collateral by quantity; (v) listing the collateral by a computational or allocational formula; or (vi) listing the collateral by any other method that makes the collateral objectively determinable.

Only one of those six ways of identifying collateral conceivably applies here. There is no question that the collateral at issue here—equipment contained in the news trucks—is not "specifically listed." Nor did Gravitas list the equipment by a "type defined in the UCC." While "equipment" is defined in the UCC, the financing statement does not list "*all* equipment"—only all of the equipment *on the attached list*.[17] That leaves the last way of identifying collateral: listing it in any way that makes the collateral "objectively determinable."[18] Gravitas says the

---

[14] § 679.2031, Fla. Stat.

[15] § 679.1081, Fla. Stat.

[16] § 679.1081, Fla. Stat.

[17] To be by type, Gravitas would have had to simply describe "all equipment." The reason Gravitas did not describe "all equipment" was because some of its equipment had been pledged to another creditor.

[18] It goes without saying, of course, that the collateral is not a quantity or formula.

Court, in determining whether the collateral is objectively determinable, should be mindful that the purpose of describing collateral is to "put the world on notice that a security interest exists on particular property and that further inquiry regarding the extent of the security interest may be necessary."[19] Here, Gravitas says its collateral description puts creditors on inquiry notice that it has a security interest in the equipment located in the satellite trucks.

A 1983 decision by a New Mexico court of appeals in *New Mexico v. Woodward*, although not right on point, is instructive.[20] There, Betty Woodward bought a mobile home from H.G. and Jacqualynn Fairchild for $25,000. Woodward agreed to pay $7,000 up front, with the balance paid over 15 years. As part of the sale, Woodward signed a security agreement that pledged the mobile home and all "accessions" as collateral for the loan. At some point, Woodward left the mobile home, but not before removing two awnings and a washer, dryer, and refrigerator. Later, she was arrested for violating a state statute making it a crime to remove property encumbered by a security interest. The issue in *Woodward*, then, was whether the washer, dryer, and refrigerator were encumbered by the Fairchilds' security interest.[21]

At the time, the state of Mexico had adopted a version of the UCC.[22] So, under New Mexico law, the Fairchilds were required to have a security agreement that described their collateral in order have a security interest that was enforceable against Woodward. And that description was not sufficient unless it reasonably identified what it described. The Court concluded the Fairchilds unquestionably had a security interest in the mobile home and any accessions.

---

[19] *In re Wak, Ltd.*, 147 B.R. 607, 609 (Bankr. S.D. Fla. 1992).

[20] *New Mexico v. Woodward*, 675 P.2d 1007, 1011-12 (N.M. Ct. App. 1983).

[21] *Id.* at 1008-09.

[22] *Id.* at 1010.

But the court held they did not have a security interest in the personal property located in the mobile home.[23] At the outset, the court noted that the purpose of describing the collateral in a security agreement is not to give notice to third parties; rather, the purpose is to avoid any disputes over the identity of the collateral.[24] The security agreement in that case did nothing to actually identify the washer, dryer, refrigerator, or other personal property located in the mobile home. The security agreement only identified the mobile home by serial number. The court concluded that identifying the mobile home by serial number was not sufficient to describe the personal property located in it.

This case is similar to *Woodward*. Like in *Woodward*, the security agreement in this case merely describes certain news trucks. It does not mention—either generally or specifically—the equipment located in them. Gravitas, instead, contends the mere fact that the equipment is typically located in a satellite news truck is enough. That is the essentially the same argument that was rejected in *Woodward*. Accordingly, the Court concludes that Gravitas does not have a security interest in the equipment located inside the news trucks.

Even if Gravitas somehow had a security interest in the equipment located inside the news trucks, that interest could be avoided because Gravitas never perfected it. According to Gravitas, the fact that the financing statement in this case says it covers the "personal property, equipment and vehicles described on Exhibit 'B'"—coupled with the fact that Exhibit "B" to the financing statement lists an "SNN Van," "SNN News Van," and "SNN Live Truck"—would put a reasonable creditor on inquiry notice that the trucks may contain equipment subject to Gravitas' security interest. While the standard for describing collateral in a financing statement is

---

[23] *Id.*

[24] *Id.*

more lenient than for a security agreement, the Court cannot see how the collateral description in the financing statement—which is identical to the description in the security agreement—would put any creditor on inquiry notice.

There are only two pieces of information in the financing statement that could conceivably put a creditor on inquiry notice: (i) the reference to "vehicles" and "equipment" on the UCC-1 itself; and (ii) the references to the satellite news trucks on the attachment. But, significantly, there is nothing linking the two. In fact, the attachment to the financing statement specifically identifies equipment covered by Gravitas' security interest that is not located in the news trucks. The Court is hard pressed, in light of the fact that the financing statement specifically lists certain equipment on the attachment, how a creditor would be put on inquiry notice that there may be additional—yet unidentified—equipment in the news trucks that is also subject to Gravitas' security interest. At a minimum, Gravitas would have had to link the equipment to the vehicles (i.e., "SNN News van w/ equipment") in order to put a reasonable creditor on inquiry notice.

But even that may have not been sufficient. In *In re LMJ, Inc.*, the court specifically rejected a financing statement that referenced personal property at a specific location.[25] In that case, the debtor operated a night club and restaurant known as Crawdaddy's. Landon Mack, the Debtor's sole shareholder, claimed a perfected security interest in all of the property of the debtor's estate.[26] Mack's financing statement provided that he had a lien on "the personal

---

[25] 159 B.R. 926, 929 (D. Nev. 1993).

[26] *Id.* at 927.

property and fixtures on the lease and lease premises of the Nightclub/Restaurant located at 7111 S. Virginia Street, Reno, Nevada."[27]

The court in that case held that identifying the personal property by its location was not sufficient. To begin with, the court reasoned that using location-specific terminology was meaningless because it is not dependable.[28] For instance, what if the debtor moved the personal property from the nightclub? Would Mack have lost his security interest? Moreover, the court reasoned that the UCC does not require a party searching the public records to go to the debtor's place of business to inspect the property.[29] That would not be commercially reasonable. And it might be impossible since creditors do not have a legal right to enter a debtor's place of business. Finally, the court noted—comparing the Hard Rock Café to Hooters—that there is often no "typical" personal property in a restaurant.[30] The Court concluded that Mack's insufficient description of his collateral could not be saved by the fact that a financing statement can be effective even if it contains minor errors.

At best, Gravitas implicitly describes its collateral by location (i.e., equipment located in the news trucks). But even under that scenario, the Court concludes the description in this case is insufficient for the same reasons the description was insufficient in *In re LMJ*. A description by location here would be just as undependable. The same problems would arise: does Gravitas lose it security interest when the equipment is removed from the trucks (and regain it if it is put back in)? And how would any other creditor know what that equipment is? There would be no way to verify the collateral covered. Even a call to Gravitas would not help because Gravitas would not

---

[27] *Id.* at 929.

[28] *Id.*

[29] *Id.*

[30] *Id.*

know, at any given time, what equipment was covered since it would not know what equipment was in the truck.

**Conclusion**

There is no question in this case that the Debtor is entitled to avoid Gravitas' lien on the Debtor's vehicles (including news trucks) under § 547 as a preferential transfer. And there is no need to avoid any lien on the equipment located in the news trucks (to the extent the equipment is not an accession) because Gravitas does not have a security interest in the equipment since it is not described in the parties' security agreement. Of course, if Gravitas did somehow have a security interest in the equipment, it could be avoided by the Debtor since the description of the collateral in the financing statement is not sufficient to put a reasonable creditor on inquiry notice of Gravitas' purported security interest. Accordingly, the Court will enter final judgment in favor of the Debtor on Counts I and II of its complaint.

**DATED** in Chambers at Tampa, Florida, on _____September 12, 2013_____.


Michael G. Williamson
United States Bankruptcy Judge


Service Instructions: Bernard Morse is directed to serve a copy of this memorandum opinion on interested parties and file a proof of service within 3 days of entry of the opinion.


**Bernard J. Morse, Esq.**
**Morse & Gomez, P.A.**
*Counsel for Debtor*

**Gregory M. McCoskey, Esq.**
**Akerman Senterfitt**
*Counsel for Gravitas Leasing, LLC*